**FN MANUFACTURING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Colt's Manufacturing Company, Inc., Intervenor.**

**No. 98–447 C.**

United States Court of Federal Claims.

Aug. 9, 1999.

---

Richard C. Johnson, David A. Handzo, Kevin M. Kordziel, and Sidney A. Rosenzweig, Jenner & Block, Washington, D.C., for plaintiff.

Lance J. Lerman, with whom were Assistant Attorney Frank W. Hunger, Director David M. Cohen, and Anthony H. Anikeeff, Department of Justice, Washington, D.C., for defendant. Vera Meza, United States Army Material Command, and Maria Bribriesco, United States Army Armament and Chemical Acquisition and Logistics Activity, of counsel.

Michael A. Hordell and Laura L. Hoffman, Gadsby & Hannah, LLP, for intervenor.

## ORDER DENYING INJUNCTIVE RELIEF and DIRECTING DISMISSAL OF COMPLAINT (WITHOUT COSTS)

WIESE, Judge.

I

The court held a hearing in this case on July 29, 1999, to elicit testimony from a witness, Edward L. Stolarun, the senior attorney in the Intellectual Property Law Section of the Office of Command Counsel, Headquarters, United States Army Material Command, concerning his recommendation, subsequently adopted by the Army Material Command, to enter into a settlement agreement with Colt's Manufacturing, Inc. ("Colt's"), a supplier of small firearms to the United States military. The agreement resolved certain disputes that had arisen between Colt's and the Government concerning the scope of, and the Government's discharge of its responsibilities under, a technical data licensing agreement the parties had executed in 1967.

The settlement agreement in question is formally identified as the "M4 Carbine Addendum To Technical Data Sales and Patent License Agreement." Among other things, this agreement recognizes and establishes Colt's claim to proprietary data rights in the M4 carbine and its components. (The M4 carbine is an advanced-design weapon intended for use by ground-based military forces.) Because of this acknowledgment of Colt's proprietary data rights in the M4, the Government has disabled itself from procuring that weapon on a competitive basis. Of necessity, Government procurement of the M4 may now proceed only through purchases from Colt's.

FN Manufacturing, Inc. (FNMI), the plaintiff in this action, is, like Colt's, a small-arms manufacturer. FNMI is one of the Government's principal manufacturing supply sources for the M16 rifle—the weapon in current use by United States ground forces. FNMI has brought this suit for injunctive relief claiming that the Government's decision to proceed with a sole-source procurement of M4 carbines from Colt's violates the Competition in Contracting Act, 10 U.S.C. § 2304 (1994). Specifically, the contention is that the solicitation is contrary to law because it is premised on a settlement agreement—the M4 Addendum—that unjustifiably acknowledged Colt's claim to ownership of M4 technical data rights and thereby unlawfully relinquished the Government's own ownership rights in that data.

In earlier proceedings in this case, the court ruled that plaintiff's allegations respecting the M4 Addendum, if found to be correct as a matter of fact, would provide grounds for the award of injunctive relief to plaintiff under 28 U.S.C. § 1491. *FN Manufacturing, Inc. v. United States,* 42 Fed.Cl. 87 (1998). The basis for this ruling was the court's view that a solicitation whose sole-source character was justified entirely on the basis of a settlement agreement that had impermissibly bargained-away government rights in technical data was a solicitation that harbored a violation of law and, as such, was itself unlawful.

Based on this analysis, the question to be resolved is whether the M4 Addendum meets the standards for acceptable agency action as set forth in section 706 of Title 5 of the United States Code. Put more precisely, this court is obliged to accord finality to the M4 Addendum unless the agency's adoption of that addendum reflects an exercise of administrative judgment that justifiably may be described as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## II

 The "arbitrary and capricious" standard of review is a highly deferential standard. Under that standard, a court is not empowered to substitute its judgment for that of the agency involved. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Rather, the judicial review carried out under the arbitrary and capricious standard focuses on the analytical integrity of the decision in question. "[T]he central focus of the arbitrary and capricious standard is on the rationality of the agency's 'decisionmaking,' rather than its actual decision." *United States v. Garner,* 767 F.2d 104, 116 (5th Cir.1985). Thus, in a case such as this where an agency has decided in favor of settlement rather than litigation, our chief concerns are with the completeness of the factual record on which the settlement decision is based, and the reasonableness of the legal conclusions and risk assessments drawn from those

facts. Evaluating Mr. Stolarun's testimony in light of these considerations, it is the court's conclusion that the M4 Addendum represents a legitimate exercise of administrative authority.

Mr. Stolarun is an attorney with many years of experience in intellectual property law. To gain an understanding of the issues confronting him—the issues he was later to resolve through execution of the M4 Addendum—Mr. Stolarun relied on information from several sources: (i) his own agency's (DCA's) records; (ii) written commentary and supporting documents supplied by the United States Army Armament and Chemical Acquisition and Logistics Agency ("ACALA"), the using agency; (iii) technical advice provided by Loren Brunton, an ACALA small-arms technical expert with in-depth knowledge both of the M16 Licensing Agreement—the basic technical data licensing agreement that the parties had executed in 1967—and the several contracts involving the M4 carbine which the Government thereafter had funded; and (iv) details of proprietary data presented as part of Colt's claims presentation to the Government.

Based on the information gleaned from these sources and after extensive in-house deliberation of the issues raised, Mr. Stolarun came to several conclusions in regard to those issues that were ultimately to be reflected in the M4 Addendum. His principal conclusions were these:

First, although the Government had breached the M16 Licensing Agreement by failing adequately to protect Colt's proprietary data against improper disclosure (and therefore faced a potential monetary liability, assuming, of course, damages could be proven), Mr. Stolarun concluded that there was little likelihood that Colt's could also make good on its threat to terminate the agreement. Based on this assessment, a potential loss of data rights under the 1967 Licensing Agreement was not a factor that influenced the Government's decision to recognize Colt's rights in the M4 technical data.

Second, Mr. Stolarun determined that Colt's claim to rights in M4 technical data is traceable to technology that pre-existed the parties' 1967 Licensing Agreement and rep-

resents data that was not made part of the technology licensed to the Government under that agreement.

Third, Mr. Stolarun reasoned that Colt's participation, as a contractor, in post–1967 Government-funded developmental efforts involving the M4 carbine did not result in the extinguishment of those unique elements of M4 component design and manufacture that originated with Colt's and that Colt's had thereafter incorporated into the M4 carbine prototype. In this connection, Mr. Stolarun interpreted various actions taken by Colt's in conjunction with its performance of these contracts as attempts to invoke the disclosure restrictions of the 1967 Licensing Agreement rather than as Colt's acquiescence to the inclusion of the M4 technology under the terms of the Licensing Agreement, or Colt's acknowledgment of the Government's right to use the M4 technology in competitive procurements.[1]

Although each of these basic conclusions could be disputed and a different conclusion put in its place, none, however, could be said to rest on a dubious legal analysis or to depend upon a disregard of important facts or implausible inferences. Mr. Stolarun's conclusions were informed, well thought-out and honestly arrived at. They are entitled to finality. And so too is the settlement agreement that reflects these conclusions—the M4 Addendum.

### III

■ Based on the reasons set forth in this Order, the court finds that the M4 Carbine Addendum to the Technical Data Sales and Patent License Agreement constitutes lawful agency action. The court further finds that the sole-source contract for M4/M4A1 carbines that was awarded to Colt's Manufacturing Company, Inc. on May 5, 1998, represents a lawful exercise of procurement authority.

1. The contract activities referred to include the following: (i) Colt's letter of March 5, 1985 advising the Army of Colt's expectation that the M4 carbine be treated as being subject to the parties' 1967 Licensing Agreement; (ii) the parties' 1985 contract for the manufacture of a quantity of M4 prototypes which specified (in Clause H.18) that

Accordingly, plaintiff's motion for injunctive relief, filed May 15, 1998, is denied and its complaint is to be dismissed. No costs.

the technical data deliverable under the contract "will be subject to the existing Colt/Government License Agreement ... dated 30 June 1967"; and (iii) Colt's repeated use of the restrictive legends set forth in the parties' 1967 License Agreement when identifying M4 data.